## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| JOSHUA F. PETER, ET AL., | **Superior Court Case No. <u>CV0426-18</u>** |
| Plaintiffs, | |
| vs. | **DECISION AND ORDER RE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| FRANCIS GILL, ET AL., | |
| Defendants. | |

The Court here addresses Defendants' Motion for Partial Summary Judgment. Defendants ask the Court to find as a matter of law that there has been no breach of the parties' Settlement Agreement, all claims made in this action have been released, the doctrines of equitable estoppel and promissory estoppel do not apply, Plaintiffs are not entitled to declaratory relief or quiet title claims against Defendant Stephanie Mendiola, and that Mendiola holds her title free and clear of any claims by Plaintiffs. Defs.' Mot. Partial Summ. J. at 1-2 (Jan. 22, 2019). Having considered the parties' arguments and applicable law, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

## I.  <u>PROCEDURAL HISTORY</u>

Plaintiffs filed the present action as a result of Defendant Cyfred, Ltd.'s alleged failure to deliver numerous Gill-Baza Subdivision homeowners clear title to their lots as required by a Settlement Agreement between the parties. Instead, Mendiola remains the registered owner of Plaintiffs' lots due to several 2006 foreclosure sales.

# ORIGINAL

Plaintiffs filed claims of: (1) Equitable Estoppel against and Breach of Contract by Cyfred and/or Defendant Francis Gill; (2) Fraud by Gill and/or ratified by Cyfred; (3) Deceptive Trade Practices Act (DTPA) violations against Gill and/or Cyfred; (4) Breach of Contract by Gill and/or Cyfred regarding a March 14, 2013 promise; (5) Promissory Estoppel against and Breach of Contract by Gill and/or Cyfred for the March 14, 2013 promise; (6) Declaratory Judgment against Mendiola; and (7) Quiet Title against Mendiola regarding title to 14 foreclosed lots. Second Am. Compl. (Aug. 27, 2019).

The Court has already dismissed Plaintiffs' Fraud and DTPA claims as time-barred. Dec. and Order re Mot. Dismiss (Feb. 15, 2019). Since that dismissal, the Court allowed a further amendment of the Complaint following its Order granting the joinder of Wayson Wong as a plaintiff. Dec. and Order re Mot. Join Wayson Wong as Plaintiff (July 12, 2019). The Court allowed a limited amendment to reflect the addition of Wong as a party. However, the Court did not permit Plaintiffs to reassert the time-barred claims of Fraud or DTPA in the Second Amended Complaint. Though Plaintiffs included such claims in the Second Amended Complaint, they remain dismissed without prejudice.

## II.   UNDISPUTED FACTS

1. Cyfred, Gill, Plaintiffs, and others, entered into a Settlement Agreement to resolve litigation concerning the Gill Baza Subdivision.

2. The Settlement Agreement's requirements were executed in three major phases. Compl., Ex. 1 at 2 (Apr. 30, 2018).

3. In the first major phase, among other obligations, by March 30, 2012, Cyfred was required to deposit with escrow all documents needed to be recorded to cause each Plaintiff's original lot to be owned by him free and clear. Compl., Ex. 1 at 7, 13.

ORIGINAL

4. Prior to completing the first major phase and moving onto the second phase, any party could give a Notice of Material Breach. Compl., Ex. 1 at 9. A "material breach" meant "the failure by any party to perform any of the obligations of that party which are in the first major phase of the settlement . . . by the date indicated for the performance of such obligation . . . ." Compl., Ex. 1 at 26.

5. If Notice of Material Breach was given, escrow would not proceed until further written agreement by all parties or a court order. Compl., Ex. 1 at 9. The party giving such notice could sue to enforce the Settlement Agreement for damages or give notice that the Settlement Agreement was null and void. Compl., Ex. 1 at 26.

6. However, if no Notice of Material Breach was issued, "then all of the consideration under this Agreement that could have been provided by March 30, 2012, will have been deemed provided to the respective parties and [the] first major phase of this settlement will have been completed." Compl., Ex. 1 at 26. Moreover, absent a Notice of Material Breach, as of March 30, 2012, "the parties will have mutually released each other in accordance with the terms and conditions of the Mutual Release of Claims." Compl., Ex. 1 at 26; *see also* Compl., Ex. 1, Ex. C (Mutual Release of Claims).

7. At that time, Cyfred had sought bankruptcy protection. But the Bankruptcy Court did not approve the settlement agreement. Compl., Ex. 2 at 1. The parties decided to proceed with the settlement and executed Second Amended Escrow Instructions for the Settlement of the Gill-Baza Cases. The Escrow Instructions set March 14, 2013, as the deadline for escrow to record all documents causing the Plaintiffs to own their original lots free and clear. Compl., Ex. 3 at 7.

ORIGINAL

8. By the March 14, 2013 date, unless escrow received a Notice of Material Breach, it was required to record all provided documents that caused the Plaintiffs to own their lots free and clear.

9. On March 5, 2013, Gill wrote to Plaintiffs' counsel that "All lots purchased by Stephanie at foreclosure were returned to Cyfred by court order. If you want Stephanie to sign Grant Deeds to Cyfred and for Cyfred to then deed those properties to your clients please prepare all the Deeds you require and Cyfred will obtain Stepahnie's signature and Cyfred will sign the Deeds to your clients." Compl., Ex. 4 at 1.

10. On March 6, 2013, Gill wrote to Plaintiffs' counsel that "All of Stephanie's lots [have] been deeded to Cyfred - there are a few that need resolving. I sent you the draft CT's yesterday showing this fact from DLM. Why is that not sufficient? So I believe the issues with Steph are cleared up." Compl., Ex. 5. Plaintiffs' counsel responded asking to see the deeds tendered by Mendiola. Compl., Ex. 5.

11. On March 13, 2013, Plaintiffs' counsel provided a checklist of items of concern. Among them, their counsel noted: "Stephanie Mendiola's deed of all of her interests to Cyfred in the 15 lots she obtained foreclosure deeds for - Where is it?" Compl., Ex. 6.

12. On March 14, 2013, Gill emailed the escrow officer with a deed for Mendiola to sign. "She will be in today to sign." Compl., Ex. 9; Pls.' Memo. in Opp'n., Decl. Wayson Wong ¶¶ 35, 38 (Feb. 19, 2019).

13. Mendiola did not sign deeds before the March 14, 2013 closing, however, Gill indicated that Mendiola would come in the next day or two to sign. Pls.' Memo. in Opp'n., Decl. Wayson Wong ¶ 39.

ORIGINAL

14. Plaintiffs did not furnish a Notice of Material Breach concerning a deed from Mendiola prior to the closing, but issued a Notice concerning other issues. Pls.' Memo. in Opp'n., Decl. Wayson Wong ¶¶ 39, 40.

15. On March 18, 2013, Plaintiffs' counsel emailed Gill: "I understand that you believe that Stephanie Mendiola's deed is not necessary to close. I concur regarding the closing, but I believe it still is necessary to clear the title to the original or first lots. I will not hold the closing for it . . . . " Pls.' Memo. in Opp'n., Decl. Wayson Wong, Ex. I at 1.

16. Mendiola did not sign the deed during the rest of 2013. Pls.' Memo. in Opp'n., Decl. Wayson Wong ¶ 41.

17. Plaintiffs assert that the omission of Mendiola's deeds has prevented them from receiving free and clear title to their lots. Second Am. Compl. ¶ 20; Pls.' Memo. in Opp'n., Decl. Wayson Wong ¶ 20.

18. During the closing, the parties also executed a First Amended Mutual Release of Claims, which incorporates all provisions of the original Mutual Release. Add. to Pls.' Supp. Memo. in Opp'n. to Defs.' Mot. Disqualify Wayson Wong, Ex. I (Apr. 24, 2019).

19. Mendiola is not a signatory to the Settlement Agreement. Compl., Ex. 1. However, she is a releasee in the Mutual Release of Claims, and her attorney signed the First Amended Mutual Release on her behalf. Compl., Ex. 1, Ex. C; Add. to Pls.' Supp. Memo. in Opp'n. to Defs.' Mot. Disqualify Wayson Wong, Ex. I.

## III.    <u>LAW AND DISCUSSION</u>

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

ORIGINAL

matter of law." GRCP 56(c). A genuine issue of fact exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7 (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). A material fact is "one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. . . . Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Iizuka Corp.*, 1997 Guam 10 ¶ 7. "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." *Id.* at ¶ 8 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Ultimately, however, "the Court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Fin. Corp.*, 2000 Guam 27 ¶ 7 (citing *Anderson*, 477 U.S. at 249).

## A. **Claims Against Cyfred and/or Gill**

Following the Court's dismissal of the fraud and DTPA claims, three general categories of claims remain against Cyfred and Gill: breach of contract and fraudulent inducement concerning the Settlement Agreement; equitable estoppel; and breach of contract and promissory estoppel concerning Gill's statements on March 14, 2013.

### 1. Breach of Contract Concerning the Settlement Agreement

Defendants argue that summary judgment on Plaintiffs' first count of breach of contract is appropriate due to a lack of evidence that Cyfred breached the Settlement Agreement. In particular, the agreement expressly states that any obligations owed to Plaintiffs had to be provided to Plaintiffs by March 14, 2013, and any obligation not provided would be deemed

ORIGINAL

performed if no Notice of Material Breach was issued. Defs.' Mot. Partial Summ. J. at 6-7; Compl., Ex. 1 at 26. However, Plaintiffs argue they did not issue a Notice of Material Breach due to several alleged misrepresentations by Gill which induced them to not issue a notice. Pls.' Opp'n at 5 (Feb. 19, 2019); Pls.' Supp. Opp'n at 6 (June 5, 2019).

Under a breach of contract theory, Plaintiffs must establish (1) the existence of a contract, (2) their performance or excuse for nonperformance, (3) Defendants' breach, and (4) resulting damages. *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 19. When analyzing a breach of contract claim, if a contract's language is clear and explicit, such language governs the interpretation. 18 GCA § 87104. "[T]he intention of the parties is to be ascertained from the writing alone, if possible..." 18 GCA § 87105.

Plaintiffs fail to demonstrate that Defendants breached the Settlement Agreement as alleged in their first count. According to the terms of the Settlement Agreement, Cyfred fulfilled its obligations when Plaintiffs failed to issue a Notice of Material Breach. Compl., Ex. 1 at 26 ("all of the consideration under this Agreement that could have been provided by March 30, 2012, will have been deemed provided to the respective parties and [the] first major phase of this settlement will have been completed."); *see also Bradley v. Apel*, 531 S.W.2d 678, 681 (Tex. Civ. App. 1975), *writ refused NRE* (finding that the plaintiff could assert a breach of contract claim against the defendant only if the breach occurred on or prior to June 13, as the parties' contract demanded). In other words, Plaintiffs waived a viable breach of contract claim when they failed to issue a Notice of Material Breach.

Plaintiffs, however, attempt to keep their contractual claims alive by asserting that Gill induced them to not issue a Notice of Material Breach by promising Mendiola would sign deeds prior to the closing. At their core, however, these alleged misrepresentations support fraudulent

ORIGINAL

inducement claims masked as breach of contract claims. *See, e.g., Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 4th 2004); *Muncher v. NCR Corp.*, 2017 WL 2774805, *11 (N.D. Ala. June 27, 2017). Fraudulent inducement claims are claims grounded in fraud, and they have a three-year statute of limitations bar. 7 GCA § 11303(d). Based on the Court's reasoning in its Decision and Order re Motion to Dismiss, the applicable statute of limitations for Plaintiffs' disguised fraud claims was tolled by the pendency of CV0934-15 and CV0073-16 for a total of 616 days. Dec. and Order re Mot. Dismiss at 5, 7. Applied to Count I and without further facts establishing tolling, Plaintiffs' fraudulent inducement claims are facially time-barred as they expired on approximately February 12, 2018.[1]

Since Plaintiffs cannot pursue untimely fraudulent inducement claims, and have no remedies for breach under the terms of the contract since they did not submit a Notice of Material Breach, summary judgment is appropriate on their breach of contract claim as alleged in Count I.

## 2. Equitable Estoppel

Count I also invokes equitable estoppel: "Cyfred has been equitably estopped from asserting the lack of any timely notice of material breach as a defense to its obligation under the [Settlement Agreement] to cause the plaintiffs to hold or own the 14 lots 'free and clear' of any claim or encumbrance by Stephanie Mendiola as to those lots." Second Am. Compl. ¶ 64. Equitable estoppel bars a party from asserting a right he would otherwise have had because, by "his own declaration, act or omission, [he] intentionally and deliberately led another to believe a particular thing true, and to act upon such belief." 6 GCA § 5106(3); *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9 ¶ 24. However, equitable estoppel is not a claim; it is "available

---

[1] The Court's February 15, 2019 Decision and Order re Motion to Dismiss adopted Plaintiffs' asserted accrual date for their fraud claim--June 5, 2013.

only as a 'shield' or defense." *Mobil Oil Guam, Inc.*, 2004 Guam 9; *see also Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007) (en banc) ("the doctrine of equitable estoppel is not a cause of action at all"). On this procedural point, Plaintiffs may not assert Equitable Estoppel as a claim, as they have in their Second Amended Complaint. Summary judgment is therefore appropriate on Plaintiffs' first count for equitable estoppel.[2]

Beyond the procedural point, Plaintiffs assert that they may utilize equitable estoppel in response to Defendants' argument that Plaintiffs have waived their breach of contract claim. The Court recognizes that the "hallmark of the [equitable estoppel] doctrine is its flexible application." *Steckline Comms., Inc. v. Journal Broadcast Group of Kansas, Inc.*, 388 P.3d 84, 92 (Kan. 2017). The Court thus proceeds to examine whether there are genuine issues of material fact surrounding the equitable estoppel of Defendants' contention of waiver.

Entitlement to equitable estoppel is typically a question of fact to be resolved by the trier of fact. *Mills v. Forestex Co.*, 134 Cal. Rptr. 2d 273, 296 (Cal. App. 2003). The party relying on the doctrine must prove the following elements: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. *Mobil Oil Guam, Inc.*, 2004 Guam 9 ¶ 24. The party relying on the doctrine must prove all four elements. *Id.*

Moreover, reliance must be based on misrepresentations or concealments of present fact, rather than a promise or future guarantee. *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 412 (9th

---

[2] Defendants also advocated release arguments concerning Plaintiffs' Breach of Contract claim. Because the Court found Plaintiffs did not demonstrate a breach of contract, it declines to address those arguments.

ORIGINAL

Cir. 1994) (citing *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1397 (9th Cir.), *cert. denied*, 479 U.S. 816 (1986)); *Board of Cty. Com'rs of Summit Cty. v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996) (en banc) (equitable estoppel must involve a misrepresentation that presently exists or has existed in the past). The chronology involved in Gill's alleged misrepresentation, however, disqualifies Plaintiffs from seeking equitable estoppel. Plaintiffs allege that Gill promised that Mendiola would sign documents prior to the March 14, 2013 closing. This was a promise; it was not a present or existing fact. The statement, even if qualifying as a misrepresentation, therefore cannot form the basis for equitable estoppel.

Even assuming Plaintiffs may avail of equitable estoppel, there is no genuine issue of material fact as to the unreasonableness of Plaintiffs' reliance. Plaintiffs knew of the deadline to submit a Notice of Material Breach, as it was a contractual provision and Plaintiffs utilized such provision when submitting such Notice on other grounds. When the closing date and time approached and Mendiola had not yet appeared, Plaintiffs still had an opportunity to submit a Notice of Material Breach to preserve their rights. It was not reasonable for them to rely on Gill's promise that Mendiola would sign deeds when Plaintiffs had contractual rights to preclude the closing due to a breach.

The Court thus grants summary judgment on Plaintiffs' assertion of equitable estoppel on three separate bases. First, it does not qualify as a claim. Second, Gill's statements concerned a promise--not a present, existing fact. Third, there is no genuine issue of material fact surrounding the unreasonableness of Plaintiffs' reliance on Gill's statements in the face of existing contractual protections.

ORIGINAL

3. <u>Breach of Contract and Promissory Estoppel Concerning Gill's Misrepresentations</u>

In their Fourth and Fifth counts, Plaintiffs assert Breach of Contract and Promissory Estoppel claims against Gill for breaching the March 14, 2013 promise assuring Plaintiffs that Mendiola would come into escrow shortly to sign the deeds to the lots. Second Am. Compl. ¶¶ 82, 84. Defendants respond that Plaintiffs' claim of a promise attempts to change the Settlement Agreement's terms, which is a fully integrated contract that cannot be changed except by a writing signed by all parties. Defs.' Mot. Partial Summ. J. at 12.

Where one party makes a promise and a second party acts in reasonable and detrimental reliance on that promise, the first party's promise may be enforced even in the absence of a completed contract. *Hass v. Darigold Dairy Prods., Inc.,* 751 F.2d 1096, 1100 (9th Cir. 1985); Restatement (Second) of Contracts § 90 (1981). Though most states allow parties to allege misrepresentations occurred during contract negotiations, they also generally bar parties from alleging a separate promise was made when a fully integrated contract exists. *See e.g., World Championship Wrestling, Inc. v. GJS Intern., Inc.,* 13 F. Supp. 2d 725, 736 (N.D. Ill. 1998); *Wagner v. Reuter,* 208 P.3d 1317, 1322 (Wyo. 2008).

To be clear, a fully integrated contract governs the parties' agreement: "<u>Complete Agreement Among the Parties</u>. This Agreement is a fully integrated document; it contains all of the agreement of the parties about the matters in it." Compl., Ex. 1 at ¶ 27. Moreover, the parties agreed that the "Agreement may not be changed unless there has been a writing showing such change and signed by all of the parties or by all of their attorneys." *Id.* at ¶ 25. The issue therefore becomes whether Plaintiffs may maintain breach of contract and promissory estoppel claims on a separate promise when a fully integrated contract already exists.

ORIGINAL

Generally, promissory estoppel does not apply where a fully integrated, enforceable contract governs the promise at issue. *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 367 A.3d 330, 347 (Del. 2013); *Wagner v. Reuter*, 208 P.3d 1317, 1322 (Wyo. 2008); *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 859 N.E.2d 359, 367 (Ind. App. 2008) (promissory estoppel permits recovery where no contract exists). That is the case here: the parties agreed to the terms of the Settlement Agreement and included an integration clause. Because they have an existing contractual relationship which governs what each party must do to complete a full settlement of the Gill-Baza cases, the Settlement Agreement--and not side promises--governs the parties' rights and obligations. For this reason, Plaintiffs cannot pursue a breach of contract or promissory estoppel claim on Gill's alleged March 14 promise.

Moreover, if the parties wished to change the contract, they agreed to put such changes in writing signed by all parties. That did not occur. Plaintiffs cannot pursue extra-contractual promises governing the same conduct when they had a contractual remedy and obligation to memorialize such promises. The Court therefore finds summary judgment appropriate on Plaintiffs' Count Four and Count Five.

## B. Claims Against Mendiola

Defendants allege that Plaintiffs are not entitled to declaratory relief or quiet title against Mendiola because she was not a party to the Settlement Agreement and had no duty to provide Plaintiffs with a deed. Defs.' Mot. Partial Summ. J. at 13-14. Even if the terms of the Settlement Agreement did apply to her, Defendants argue that the Mutual Release of Claims releases any claims against her. *Id.* at 14. Finally, Defendants state that any claims pertaining to the foreclosures which were brought or could have been brought in CV1511-06 and CV1448-02 are also allegedly unavailable to Plaintiffs as both cases were dismissed with prejudice. *Id.* at 14-15.

ORIGINAL

Third parties involved in contracts are generally distinguished as either incidental beneficiaries or direct beneficiaries. A direct beneficiary is someone whom the parties intended to directly benefit from the performance of the agreement, while an incidental beneficiary is someone who receives an unintended benefit from a contract but whom the parties did not contemplate benefiting. *See, e.g., Pub. Serv. Co. of N.H. v. Hudson Light & Power Dep't*, 938 F.2d 338, 342 (1st Cir. 1991) ("[u]nless the performance required by the contract will directly benefit the would-be intended beneficiary, he is at best an incidental beneficiary."); *Fed. Deposit Ins. Corp. v. G. III Invs., Ltd.*, 761 S.W.2d 201, 204 (Mo. Ct. App. 1988); *Hacker v. Shelter Ins. Co.*, 902 N.E.2d 188 (Ill. App. 2009); *Bank of America Nat. Ass'n v. Bassman FBT, L.L.C.*, 981 N.E.2d 1 (Ill. App. 2012), *as modified on denial of reh'g*, (Dec. 7, 2012); *Dollens v. Wells Fargo Bank, N.A.*, 356 P.3d 531 (N.M. Ct. App. 2015). An incidental beneficiary has no rights under a contract and may not sue to enforce them. *Hacker*, 902 N.E.2d 188; *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985) ("It is axiomatic in contract law that an incidental beneficiary cannot enforce the contract."). To the contrary, direct beneficiaries do have enforceable rights under a contract. *Wilson v. Gen. Mortg. Co.*, 638 S.W.2d 821, 823 (Mo. Ct. App. 1982).

The Mutual Release of Claims at issue states: "This agreement is subject to terms and conditions of the Settlement Agreement for the Gill-Baza Cases and will become effective only according to the terms stated therein." Compl. Ex. C ¶ 4. Paragraph 13 of the Settlement Agreement outlines when the Mutual Release of Claims applies, and though it does not expressly mention Mendiola or any benefits she may receive under the Settlement Agreement, the Court reads the two in conjunction. Given that Plaintiffs owe Mendiola a duty under the Mutual Release of Claims, and the parties contracted for such a duty, the Court finds Mendiola to be a

ORIGINAL

direct beneficiary to the Mutual Release of Claims. Because direct beneficiaries can enforce rights under a contract, Mendiola has the right to enforce the Mutual Release of Claims against Plaintiffs. Direct beneficiaries are not contractual parties to the agreement, however, and therefore have no obligations towards the contracting parties. Accordingly, Mendiola had no duty to provide Plaintiffs with a deed.

However, that does not mean Plaintiffs cannot sue Mendiola on declaratory relief and quiet title grounds. Pursuant to 7 GCA § 26801, "[a]ny person interested under a deed, will, or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over, or upon property...[may] bring an action in the court having jurisdiction for a declaration of his rights and duties." As demonstrated above and based on their competing title claims for the same property, Plaintiffs and Mendiola have a legal relationship which Plaintiffs are within their rights to clarify. Similarly, "[a]n action may be brought by any person against another who claims an estate or interest in real or personal property, adverse to him, for the purpose of determining such adverse claim...." 21 GCA § 25101. Mendiola is claiming an interest in real property adverse to Plaintiffs' interests, and Plaintiffs are entitled to seek quiet title against her.

Nonetheless, the Mutual Release of Claims may apply to release Plaintiffs' claims against Mendiola. Plaintiffs agreed to "release...from any and all claims that the party asserted or could have asserted in that case against the other party or that other party's attorney in that case and agrees that such claims will be dismissed with prejudice...." Compl., Ex. C ¶ 1. The cases referenced include CV1511-06, CV1448-02, and several others. Compl. Ex. C, Ex. A. The relevant cases are discussed below.

ORIGINAL

*Sananap v. Cyfred, Ltd.*, 2009 Guam 13 is the appeal for CV1448-02. In its opinion, the Supreme Court of Guam addresses the plaintiffs' argument that Mendiola is an agent of Cyfred who bought the title of at least one lot in her name during the 2006 foreclosures in an attempt to get around the court's ability to set aside foreclosure sales to parties in the suit. The Supreme Court remanded the case to determine Mendiola's relationship, if any, to Cyfred. *Id.* ¶ 31. However, the plaintiffs chose to "dismiss all claims and counterclaims in this case with prejudice, except all plaintiffs' claims or counterclaims for bodily injury and/or property damages that were brought or could have been brought in this case against defendant Cyfred, Ltd., and have been or will be asserted against it in CV1511-06." CV1448-02, Stip. Dismissal With and Without Prejudice (Mar. 14, 2013). None of the claims asserted in CV1448-02 mention Mendiola. CV1448-02, First Am. Compl. (May 25, 2006). Shortly thereafter, CV1511-06 was filed. CV1511-06's First Amended Complaint mentions Mendiola--she was alleged to be a messenger for Cyfred who conspired with Gill to wrongfully evict or foreclose on the plaintiffs in the case--but there is no mention of her as a title holder. CV1511-06, First Am. Compl. ¶¶ 5, 70, 61-64, 81 (April 11, 2007).

Accordingly, Plaintiffs here allege that only the claims asserted against her in CV1448-02 and CV1511-06's First Amended Complaint were dismissed with prejudice and they can still assert quiet title claims against her now. Pls.' Opp'n at 14, Ex. III (plaintiffs "stipulate to dismiss all claims in this case with prejudice."). They argue that the Mutual Release of Claims triggered the expansion of the released claims to include claims that could have been brought in CV1448-02 and CV1511-06. *Id.*; *see also* Compl., Ex. C ¶ 1. And because the Settlement Agreement is breached, the Mutual Release of Claims is also breached, enabling Plaintiffs to sue Mendiola for claims that were otherwise released. Compl., Ex. C ¶ 5, Mutual Release of Claims

("If any party to this agreement breaches it, the other party or parties may bring an action against the breaching party for such breach....").

In reviewing Plaintiffs' Second Amended Complaint, the Court finds the quiet title claims against Mendiola are particularly specific towards asking the Court to find that "[t]he foreclosure sales under which Stephanie Mendiola purportedly took her titles to the 14 lots were illegal and/or invalid; and therefore, her titles to the 14 lots are illegal and/or invalid." Second Am. Compl. ¶ 96. Having based their quiet title claims on the 2006 foreclosure sales that were at issue in CV1448-02 and CV1511-06, the Court finds Plaintiffs could have brought them in either of those cases. As addressed previously, Plaintiffs do not have a breach of contract claim as to the Settlement Agreement and therefore do not have a breach of contract claim as to the Mutual Release of Claims. The Mutual Release of Claims' language accordingly releases Plaintiffs' ability to assert their Count Seven Quiet Title claims against Mendiola as a matter of law.

However, the language in Plaintiffs' Declaratory Judgment claim is much broader: "As indicated in the facts set forth, Stephanie Mendiola has no valid claim or interest in any of the 14 lots." Second Am. Compl. ¶92. The "facts set forth" in the Second Amended Complaint include her alleged transfer of the properties to Cyfred in April 2014. Second Am. Compl. ¶¶ 49, 52, 53. Plaintiffs could not have brought any claims related to this alleged April 2014 transfer in a prior case and therefore Plaintiffs' Declaratory Judgment claims are not released by the Mutual Release of Claims. Having found that Plaintiffs may maintain their Declaratory Judgment claims against Mendiola, the Court finds summary judgment in favor of Defendants on Plaintiffs' Count Six to be inappropriate.[3]

---

[3] The parties' briefing on this Motion also concerned the validity of Mendiola's title and delivery of title over the 14 lots. This same issue is briefed in Plaintiffs' Motion for Partial Summary Judgment, which is still pending before the Court. The Court defers all discussion of this issue to its impending Decision and Order re Plaintiff's Motion for Partial Summary Judgment.

ORIGINAL

## IV.    CONCLUSION

The Court concludes the following as a matter of law: Plaintiffs cannot assert Breach of

Contract and Equitable Estoppel claims against Defendants Cyfred and Gill for their conduct

leading up to the parties contracting for the Settlement Agreement, Breach of Contract or

Promissory Estoppel claims with regard to Gill's alleged March 14, 2013 promise, or Quiet Title

claims against Mendiola based on the alleged invalidity of the 2006 foreclosure sales.

Plaintiffs are, however, entitled to assert Declaratory Judgment claims against Mendiola.[4]

The Court notes that there are two other dispositive motions pending which affect Plaintiffs'

claims against Mendiola:   Plaintiffs' Motion for Summary Judgment and Defendants' Ex Parte

Application for Reconsideration of the Court's February 15, 2019 Decision and Order re Motion

to Dismiss.

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion

for Partial Summary Judgment.

SO ORDERED this 3rd day of October 2019.

HON. ELYZE M. IRIARTE
**Judge, Superior Court of Guam**

NOTICE VIA COURT
...dge that a copy of the
...reto was placed in the
...f:

WON Ph
VAN DE VELD
10/3/19    Time: 4p2
Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Wayson W. S. Wong for Plaintiffs
Curtis C. Van de veld for Cyfred, Ltd., and Leonard Francis Gill, and Stephanie Mendiola

---

[4] The parties also reference 7 GCA § 23126 and ask the Court to find whether it applies in this case. The section applies to the execution of judgments, not to power of sale transactions. It has no bearing on this case.

ORIGINAL